# In the United States Court of Federal Claims

|  |  |
|---|---|
| **INTELLIGENT INVESTMENTS, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | No. 18-1221<br>(Filed: September 15, 2025) |

*William J. Fleischaker*, Fleischaker & Williams, Joplin, Missouri, for Plaintiff.

*Matthew Lewis*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brett A. Shumate*, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge*.

Plaintiff Intelligent Investments, Inc. (the Contractor or Plaintiff) seeks $4,905,667.71 in damages stemming from the United States Army Corps of Engineers' termination for convenience (T4C) of its contract to perform debris hauling and cleanup in Joplin, Missouri. *See generally* ECF 1. The Government argues that the Contractor's claim is largely meritless because it should have used an inventory basis of accounting instead of the total cost basis, which negates most of its claim, and that under any accounting method, the claim is overstated because it seeks recovery of unallowable costs. ECF 93 at 7-8. Before the Court is the Government's Motion for Partial Summary Judgment (ECF 93), requesting the Court to find as a matter of law that: (1) the inventory basis of accounting is the proper basis for the Contractor's claim; or, in the alternative, (2) that certain claimed costs are unrecoverable. For the reasons explained below, the Court declines to grant summary judgment as to the method of accounting, grants summary judgment as to certain claimed costs, and defers addressing the claimed profit. Accordingly, the Government's Motion for Partial Summary Judgment is **DENIED IN PART, GRANTED IN PART,** and **DEFERRED IN PART**.

## BACKGROUND

In May 2011, a Category 5 tornado ripped through the city of Joplin, Missouri. Gov't App. at 157, ECF 93-1. As part of the recovery efforts, the Army Corps issued three requests for proposals (RFP), seeking contractors to clean up debris. Gov't App. at 158. As outlined in the RFPs, the contract was for removal and hauling of debris from public property to local dump sites. Gov't App. at 24, 158. The contract was to be paid on a fixed price per ton of debris based on the type of debris and the distance hauled. Gov't App. at 23.

In June, after the Contractor submitted its proposal, the Army Corps awarded contract number W912DQ-11-C-4020 (the Contract) to the Contractor. Gov't App. at 19. The Contract incorporated by reference Federal Acquisition Regulation (FAR) 52.249-2, Termination for Convenience of the Government (Fixed-Price) (May 2004) (hereinafter, T4C Clause).[1] *See* Gov't App. at 63. The Contract was not to exceed $40 million with two options of $20 million. Gov't App. at 19. To fulfill the Contract, the Contractor subcontracted and entered into a teaming agreement with DRC Emergency Services, LLC (DRC). Gov't App. at 1-15. DRC then subcontracted with Cahaba Disaster Recovery. Gov't App. at 160.

On July 5, 2011, before work began, the Contractor submitted a request for equitable adjustment (REA) citing changes in condition, to include those that made segregation of debris containing asbestos more challenging. Gov't App. at 70-71. On July 11, 2011, the Army Corps issued the full notice to proceed, and the Contractor and its subcontractors commenced work thereafter. Gov't App. at 72, 159.

Throughout performance, the Army Corps modified the Contract several times. Gov't App. at 74, 92, 113. Notably, the Army Corps issued unilateral modification P00001, which reduced the not-to-exceed amount from $40 million to $30 million. Gov't App. at 74. The Army Corps further modified the Contract to contemplate the management of asbestos contaminated material. Gov't App. at 113. During the performance period, the Contractor entered a second subcontract with DRC. Gov't App. at 16-18.

On August 19, 2011, the Army Corps issued a notice of T4C pursuant to the T4C Clause. Gov't App. at 135-36. On the same day, the Army Corps also issued unilateral modification P00006 to decrease the not-to-exceed amount from $30 million to $10.25 million. Gov't App. at 137-38. In September 2011, the Contractor submitted a supplemental REA, which it characterized as "an offer of compromise." Gov't App. at 146. The Army Corps then issued unilateral modification P00007 outlining the termination and modifying the not-to-exceed amount from $10,250,000 to $8,899,570.97. Gov't App. at 139-40. Thereafter the Contractor engaged Excell Consulting International, LLC, *see*

---

[1] The T4C Clause states that the Government "may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest" and outlines reimbursable costs. FAR 52.249-2(a), (g).

Gov't App. at 1242, and decided to reconfigure its September REA into a T4C settlement proposal. Gov't App. at 149.

In May 2012, Kevin Lynch, the Army Corps Claims Manager, sent the Contractor the standard forms for inventory basis and total cost basis with a note stating: "I would encourage you to read FAR part 49, choose a Standard Form 1400 series on which to capture your settlement proposal, and to seek professional assistance if necessary." Gov't App. at 1422. Mr. Lynch also noted that Nicholas Deguire would serve as the Terminating Contracting Officer (TCO). *Id*.

The Contractor informed Mr. Lynch that it would submit its settlement proposal on a total cost basis and withdrew its July 2011 and September 2011 REAs. Gov't App. at 155. On August 17, 2012, the Contractor submitted its T4C settlement proposal to the TCO, requesting $4,670,264.79 beyond what had already been paid. Gov't App. at 157-68. In response, the TCO noted that, on account of an ongoing fraud investigation, the Army Corps was unable to negotiate or settle the proposal at that time. Gov't App. at 1172. He advised that the Army Corps would hold the claim and process it once it regained settlement authority. *Id*. However, the Army Corps still submitted the settlement proposal to the Defense Contract Audit Agency (DCAA) for auditing. Gov't App. at 1419.

In June 2013, the Contractor submitted a supplement to the T4C settlement proposal. Gov't App. at 1207. The supplement added $235,402.92 for additional termination costs and professional and consultant fees. *Id*. Subsequently, DCAA informed the TCO that it did not consider the settlement proposal adequate for audit because it was calculated on a total cost basis, rather than an inventory basis. Gov't App. at 1404. DCAA also noted that the total cost basis may be used if the TCO approves in advance. *Id*. In light of DCAA's guidance, TCO Deguire requested that the Contractor resubmit its settlement proposal using the inventory basis, which the Contractor has declined to do. Gov't App. at 1419.

Following the fraud investigation by the Army Criminal Investigation Division, in June of 2016, the CEO and President of Intelligent Investments, Raul Gonzales, was indicted in the United States District Court for the Western District of Missouri on one count of conspiracy to defraud the United States, three counts of making a false claim, three counts of disaster fraud, and three counts of making a false document related to the Contract. Gov't App. at 1440-52. Mr. Gonzales was later found not guilty on all counts. *United States v. Gonzales*, Case No. 16-5019, ECF 123 (W.D. Mo. 2018).

To date, TCO Deguire has not issued a decision on the Contractor's claim. Based on the ongoing disagreement as to the terms of the T4C settlement proposal, the Contractor brought this Contract Disputes Act (CDA) claim on August 15, 2018. ECF 1 at 1. On October 28, 2024, the Government filed the instant Motion for Partial Summary Judgment (ECF 93).

# LEGAL STANDARD

Rule 56(a) of the United States Court of Federal Claims permits summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is material if it "might affect the outcome of the suit," and a dispute as to a material fact is genuine if "the evidence is such that a reasonable [trier of fact] could [rule in favor of] the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over facts that are not outcome-determinative will not preclude entry of summary judgment. *Id*. When ruling on a motion for summary judgment, the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249.

On a motion for summary judgment, the moving party must inform the court of the basis of its motion through pleadings, depositions, answers to interrogatories, and admissions on file, and "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the [] court demonstrates that the standard for the entry of summary judgment … is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Nonetheless, "all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

# DISCUSSION

In its Motion for Partial Summary Judgment, the Government asserts: (1) that the Contractor's use of the total cost basis for its settlement proposal was not compatible with the FAR; and (2) that certain fees sought by the Contractor are unsupported or unallowable as a matter of law. ECF 93 at 7-8. For the reasons that follow, the Court declines to grant summary judgment as to the method of accounting but grants summary judgment as to certain claimed costs.

## I. Summary Judgment Is Not Warranted with Respect to the Method of Accounting

In its Motion, the Government urges the Court to find as a matter of law that the Contract required use of the inventory basis of accounting instead of the total cost basis of accounting for its settlement proposal. *Id*. at 18-19. Plaintiff counters that use of the total cost basis was appropriate because the inventory basis was not practicable under the

---

[2] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

circumstances and that it received authorization from the Contracting Officer to use the total cost basis. ECF 97 at 18, 21.

The crux of the Government's argument is that Plaintiff's request to use the inventory basis violates the principles of FAR 49.206-2. ECF 93 at 18-21. FAR 49.206-2, which is encompassed within FAR Subpart 49.2, explains conditions for when the inventory basis and the total cost basis should be used for fixed-price contracts. *See* FAR 49.206-2.[3] It also specifies that "[w]hen use of the inventory basis is not practicable or will unduly delay settlement, the total-cost basis … *may* be used if approved in advance by the TCO." FAR 49.206-2(b)(1) (emphasis added).

As briefed, the Government contends that because Plaintiff failed to get advance approval from the Contracting Officer to use the total cost basis of accounting, as contemplated by FAR 49.206-2, it is barred as a matter of law from using that method of accounting. ECF 93 at 19-20. Critically, however, FAR Subpart 49.2, Additional Principles for Fixed-Price Contracts Terminated for Convenience, was not incorporated into the Contract. *See* Oral Argument at 2:33 (counsel for the Government concedes that FAR 49.206-2 was not incorporated into the Contract). At oral argument, after conceding that the T4C Clause was not part of the Contract, the Government nevertheless urged the Court to follow FAR 49.206-2 as guidance for determining that the inventory basis was more appropriate than the total cost basis. *See* Oral Argument at 3:00. Rather than continue to argue that the Contractor had failed to get the Contracting Officer's approval, however, the Government instead emphasized the perceived benefits of the inventory basis. More specifically, in cost accounting terms, according to the Government, the inventory basis should be used because it will more accurately determine what portion of the Contractor's costs are allocable to the terminated portion of the Contract. *See* Oral Argument at 9:10. The Government also argued that because the Court's review is *de novo*, the proper method of accounting can be settled as a matter of law on summary judgment. *See* Oral Argument at 4:21; 31:23.

The Court finds the Government's argument unpersuasive on many fronts. As an initial matter, the central thread holding the Government's argument together is that the Contract, pursuant to FAR 49.206-2, required the Contractor to get the Contracting Officer's approval to use the total cost basis, which the Contractor purportedly failed to do. ECF 93 at 19-20. But regardless of whether the Contractor obtained approval or not, FAR 49.206-2 is not part of the Contract, as the Government conceded at Oral Argument, and thus does not bind the parties. *See Caskel Forge, Inc.*, ASBCA No. 7638, 1962 BCA ¶ 3318 (finding predecessor clause to FAR 49.206-2(b) in the Armed Services Procurement Regulation inapplicable because it was not incorporated into the contract). More generally,

---

[3] FAR 49.206-2(a)(1) states: "[u]se of the inventory basis for settlement proposals is preferred. Under this basis, the contractor may propose only costs allocable to the terminated portion of the contract." In contrast, the total cost basis permits the contractor to "itemize costs incurred under the contract up to the effective date of termination" and add the costs of settlements with subcontractors and settlement expenses. FAR 49.206-2(b)(2).

5

even if one were to look to FAR 49.206-2 for guidance, as the Government suggests, the Court finds dubious the Government's contention that selecting the method of accounting is a decision solely controlled by the Government. *David J. Needham*, ASBCA No. 57133, 10-2 BCA ¶ 34585 (finding, over the objection of the Government, that the total cost basis of accounting was appropriate). Such a reading would make superfluous other parts of FAR Subpart 49.2, which explain in more general terms that a request for equitable adjustment must be equitable. *See, e.g.*, FAR 49.201(a) ("A settlement should compensate the contractor fairly for the work done and the preparations made for the terminated portions of the contract, including a reasonable allowance for profit."); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011) (stating that there is a rule against "giving a portion of text an interpretation which renders it superfluous.").

      Further, the fact that the Contract Disputes Act mandates *de novo* review on contract interpretation matters does not mean that this is the appropriate time for the Court to make its decision regarding what method of accounting is most appropriate in this case. The Government's argument to the contrary is overly simplistic. In essence, the Government argues that because the Contract was fixed-price, use of the inventory basis is required as a matter of law. *See* ECF 93 at 14-15. Not only does this stance ignore the FAR's guidance that "[u]se of the inventory basis is *preferred*," not mandatory, but by this logic, there are no circumstances in which it would be appropriate to use the total cost method of accounting. FAR 49.206-2 (emphasis added). However, FAR 49.206-2, which is explicitly written for fixed-price contracts, offers a non-exhaustive list of examples where use of the total cost basis might be appropriate, thus expressly contemplating scenarios where the total cost basis might be used. The factors described in FAR 49.206-2 are factual in nature, and the Government has not pointed to factual evidence supporting its position that the T4C of the Contract was one where the inventory basis is more appropriate other than the fact that it was a fixed-price contract.

      Notably, the Government also has not refuted Plaintiff's arguments with respect to what would be equitable under the circumstances of this Contract given that the T4C happened very shortly into performance of the Contract. The early T4C presumably meant that the Contractor did not have enough time to recoup its initial costs that it may have reasonably thought would be spread out over a greater volume of work. The ASBCA explained in detail the concept of why amortization—i.e., when costs are gradually spread out—is important in terminations involving fixed-price contracts as follows:

> The theory of recovery of [unamortized labor costs] as part of the cost of terminated work is that a contractor bidding a fixed price per unit of work for a number of units must include in that fixed unit price all the costs of all the units knowing all the while that the cost experienced during the manufacture of the earlier units will be greater than on the later units. Therefore, lest the contractor is to lose the portion of such costs as yet unrecovered through the price paid for delivered items, it must

>be permitted to recover it as part of the cost of terminated work.

*Lockley Mfg. Co., Inc.*, ASBCA No. 21231, 78-1 BCA ¶ 12,987. While the case at bar is for services, not for manufactured goods, the same principle holds true: the unit prices of the Contract implicitly include certain initial costs, such as recruiting and assembling a workforce, that can only be realized through partial payment of the terminated work as termination costs. *Id.* Contrary to this principle, the Government takes the position that the inventory basis of accounting is required because the Contractor's fixed prices should have fully accounted for all costs regardless of the timing of the termination. But this argument, unsupported by additional evidence, is insufficient for summary judgment.

In sum, because FAR 49.206-2 is explicitly written for fixed-price contracts and permits the total cost basis of accounting when the inventory basis is not practicable, and because the Government has not offered evidence beyond the argument that the Contract is fixed-price in support of why the total cost basis is inappropriate, summary judgment is not warranted. Accordingly, the Court denies the Government's Partial Motion for Summary Judgment with respect to use of the inventory basis of accounting over the total cost basis of accounting.

## II. Remand Is Not Warranted

Before proceeding to the Government's alternative argument challenging Plaintiff's entitlement to certain costs, the Court must first address Plaintiff's challenge that the Court lacks the power to determine the validity of Plaintiff's claimed costs. *See* ECF 97 at 18-19, 27-28. Simply put, Plaintiff maintains that neither the parties nor the Court are auditors and that "[t]he only issue this court needs to decide is whether Plaintiff should be entitled to submit its T4C settlement proposal using the total cost basis." *Id.* at 28. In Plaintiff's view, "[t]he appropriate action by this court at the present time should be to stay this action and order the TCO to submit Plaintiff's T4C settlement proposal to the DCAA for auditing under a total cost approach." *Id.* at 19.

Plaintiff's argument is based on an incorrect premise that a DCAA audit must occur before the Court may evaluate its claim. However, the Court is unaware of any support for this proposition. To be sure, FAR 49.107(a) provides that: (1) the TCO "shall" refer settlement proposals above a certain threshold to "the appropriate audit agency for review and recommendations;" and (2) the audit agency "shall" provide written comments and recommendations. However, "[t]he audit report is advisory only, and is for the TCO to use in negotiating a settlement or issuing a unilateral determination." FAR 49.107(d). As such, Plaintiff's insistence that only "the experts at DCAA" may "determine which claims should be allowed and which should not" is without merit. ECF 97 at 28. Further, review of the recoverability of claimed costs is routinely undertaken at the summary judgment stage. *See, e.g., Bannum, Inc. v. United States*, 151 Fed. Cl. 755 (2021). Therefore, the Court proceeds with its analysis of the Government's alternative argument.

### III. Certain Claimed Costs Fail as a Matter of Law or Are Not Supported

The Government argues that undisputed material facts demonstrate Plaintiff is not entitled to recover certain costs resulting from the Army Corps' T4C. ECF 93 at 22-39. Specifically, the Government seeks summary judgment on more than a dozen claimed costs, including subcontractor costs, bid and proposal costs, and professional service fees. *Id*. For the reasons that follow, the Court finds that some of Plaintiff's claimed costs are unsupported or unallowable as a matter of law.

#### A. T4C Cost Principles

The Contract between the Army Corps and Plaintiff incorporated by reference the T4C Clause found at FAR 52.249-2. Gov't App. at 63. That clause provides that, should the contractor and contracting officer fail to agree on an amount to be paid after a contracting officer terminates for convenience, the contractor shall be paid: (1) the contract price for completed but previously unpaid services; (2) costs incurred in the performance of the work terminated; (3) settlement costs that are properly chargeable to the terminated portion of the contract; and (4) fair and reasonable profit. FAR 52.249-2(g); *OK's Cascade Co. v. United States*, 97 Fed. Cl. 635, 646-47 (2011), *aff'd*, 467 F. App'x 888 (Fed. Cir. 2012). FAR 52.249-2(i) further provides that the cost principles in FAR Part 31 shall govern all costs claimed, agreed to, or determined under FAR 52.249-2.

FAR 31.201-2(a) specifies that a cost is allowable only when the cost is reasonable, allocable, and complies with generally accepted accounting principles, the terms of the contract, and any limitations set forth in that subpart. The contractor "bears the burden of proof to demonstrate compensable damages resulting from the termination." *OK's Cascade Co.*, 97 Fed. Cl. at 644. Unsubstantiated calculations will not do; instead, "termination costs must be proved to an acceptable degree of certainty." *Corban Indus., Inc. v. United States*, 24 Cl. Ct. 284, 286 (1991); *see also Bannum,* 151 Fed. Cl. at 767-69 (deeming unverified and unsupported spreadsheets prepared by plaintiff insufficient to support plaintiff's claim for termination costs and granting summary judgment). Nonetheless, because "[f]air compensation is a matter of judgment and cannot be measured exactly," FAR 49.201(a), the FAR recognizes that "[c]ost and accounting data may provide guides, but are not rigid measures, for ascertaining fair compensation." FAR 49.201(c). Accordingly, the FAR explains that "[t]he amount of recordkeeping, reporting, and accounting related to the settlement of terminated contracts should be kept to a minimum compatible with the reasonable protection of the public interest." *Id*.

With this framework in mind, the Court addresses each of the challenged costs in turn.

#### B. DRC Subcontractor Costs

Plaintiff's settlement proposal seeks $6,178,252.31 for subcontractor expenses, to include $5,866,602.46 in contract costs attributed to DRC, one of Plaintiff's major

8

subcontractors. *See* Gov't App. at 168, 183, 606. To date, Plaintiff has paid DRC $3,003,505.89, leaving a balance due of $2,863,096.57. Gov't App. at 183.

The Government argues that there is no genuine issue of material fact that DRC has withdrawn its entitlement to the unpaid amount, warranting summary judgment as to the balance of DRC's portion of the T4C claim and any associated markup and profit. ECF 93 at 22-23. The Court agrees.

Record evidence demonstrates that in September 2011, prior to Plaintiff submitting its T4C settlement proposal, DRC released Plaintiff from its claims. Gov't App. at 141-45. Specifically, on September 27, 2011, an authorized signatory of DRC executed two documents that together appear to effectuate a full release of claims in consideration of payments totaling $2,686,419.58. Gov't App. at 141-42. Though styled as "Partial Release[s] and Waiver[s] of Lien," both documents purport to "release, remise and forever discharge[] [Plaintiff] … from any and all claims, demands, and causes of action which [DRC], might have or could have against [Plaintiff] by reason of, or arising out of, the Work, through the [execution date]." *Id*.

The parties do not dispute that the Army Corps' notice of termination had an effective date of August 12, 2011, or that, as of that date, Plaintiff and its subcontractors had completed the scope of the work that was available to be performed under the Contract. ECF 93 at 10; ECF 97 at 5. Accordingly, because the execution date of the waivers (September 27, 2011) post-dated the T4C and the completion of work (August 12, 2011), the Court finds that, per the plain language of the releases, DRC released any and all claims against Plaintiff arising from work performed under the Contract.[4]

The fact that the releases were titled as "partial" matters not; it is well-settled that the plain language of the terms take precedence over headings or titles. *See Dubin v. United States*, 599 U.S. 110, 121 (2023) ("[a] title will not, of course, override the plain words of a statute") (quotation marks and citation omitted). Further, the Court recognizes that the two releases were both executed on the same date. *See* Gov't App. at 141-42. This suggests that, while Plaintiff may not have been able to remit a single payment totaling $2,686,419.58 in consideration of a total release, the parties intended for the two "partial" releases to work in tandem to release all remaining claims.

Critically, Plaintiff points to no evidentiary conflict on the record that casts doubt as to DRC's release of all claims. Instead, Plaintiff relies on mere denials and conclusory statements in its brief regarding the perceived limitations of the releases. *See, e.g.*, ECF 97 at 12. Such a showing is inadequate to survive a summary judgment motion. *SRI Intern. v.*

---

[4] Plaintiff disputes that the documents constitute full releases, yet concedes that "[t]he lien waivers only released any claims for work done up to the date of the execution of the waiver." ECF 97 at 12. Plaintiff later reiterates that "[t]he lien waivers are simply statements that DRC and its sub-contractors have been paid for all of the work performed up to the date of the lean [sic] waiver." *Id.* at 26. If all work was completed prior to execution of the releases, as Plaintiff concedes, *see id*. at 5, the Court is at a loss as to what claims Plaintiff believes could possibly have survived the releases.

*Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) ("The party opposing the [summary judgment] motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient."); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring a non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts"). As such, in light of DRC's executed releases, the Court concludes that there is no genuine issue of material fact that DRC no longer claims any entitlement to the costs attributed to it in Plaintiff's settlement proposal.

This finding is bolstered by record evidence that demonstrates that Plaintiff has repeatedly disavowed any obligation to pay DRC. For example, during Mr. Gonzales's April 2024 Rule 30(b)(6) deposition, Mr. Gonzales had the following exchanges with Government counsel:

> Q: Does Intelligent Investments owe DRC any money sitting here today?
>
> A: No.

Gov't App. at 1514.

> Q: [D]o you believe Intelligent Investments currently owes DRC any money in connection with the Joplin debris project?
>
> A: No.

Gov't App. at 1539.

> Q: If the government pays the T for C claim, is Intelligent Investments going to write a check for DRC for $2.8 million?
>
> A: No, ma'am.

Gov't App. at 1693.

> Q: Okay. And if the court awarded Intelligent Investments any money from this case, would Intelligent Investments be paying Cahaba anything?
>
> A: It's a hard question to answer … I've got to pay—I'm not—it's not going through DRC or Cahaba. Let me just say that. The money is not going that way. It's paying everyone that I invited to the dance that I feel got screwed.

Gov't App. at 1707.

Given these admissions, as well as DRC's release of its claims, the Court finds Plaintiff has not met its burden of pointing to record evidence supporting entitlement to

10

costs it expended paying DRC. To the contrary, the record evidence indicates Plaintiff is trying to recover money for costs that it did not incur as prime contractor. Without a compensable injury, there is no basis for Plaintiff to recover the claimed costs. *See OK's Cascade, Co.*, 97 Fed. Cl. at 644 ("To prevail on its claims, [Plaintiff] must demonstrate that it has suffered an actual injury."). Accordingly, because no reasonable fact finder could find that Plaintiff is entitled to recover the subcontractor expenses attributed to DRC, summary judgment is appropriate. *Anderson*, 477 U.S. at 247-48.

### C. Excell Consulting's Professional Service Fees

Plaintiff engaged Excell Consulting to prepare the T4C settlement proposal and settlement. Settlement costs generally are recoverable under FAR 31.205 and include "[a]ccounting, legal, clerical, and similar costs reasonably necessary for ... [t]he preparation and presentation, including supporting data, of settlement claims to the contracting officer." FAR 31.205-42(g)(1)(i). However, "professional and consultant services" are allowable only so long as they are "not contingent upon recovery of the costs from the Government." FAR 31.205-33(b).

Here, Plaintiff seeks costs for Excell Consulting's T4C termination services in the total amount of $275,701.91. Gov't App. at 526-27 (detailing initial costs of $91,284.40); Gov't App. at 1242-1243 (detailing supplemental costs of $184,417.51). Of this amount, the Government argues that $243,201.91 is contingent on recovery against the Government and thus is not recoverable pursuant to FAR 31.205-33's bar against contingent recoveries.[5] ECF 93 at 36. As support, the Government points to testimony from Mr. Gonzales and Excell Consulting's principal, John Balch, indicating that Excell Consulting's invoices would not be paid unless and until Plaintiff recovered money from the Government. *See id*. At this juncture, the Court cannot find these fees are contingent as a matter of law. The only reason Excell Consulting's fees may be considered contingent is because, without a recovery from the Government, Plaintiff has no means of paying Excell Consulting for services rendered. *See* ECF 97 at 26 (conceding that Excell Consulting's fees are contingent but arguing that they are "only contingent from the standpoint that without payment of [Plaintiff]'s T4c settlement proposal there will be no money to pay Excell [Consulting]."). Indeed, record evidence suggests that Excell Consulting retained discretion to enforce overdue fees any time. For example, during a deposition, Mr. Balch testified that he had the ability to collect outstanding payments through the collections process. Gov't App. at 2066 ("If I want to collect the money, I can certainly do the legal process and go after it by way of a collection process."); *id*. ("[I]f the government doesn't pay [Plaintiff] any money whatsoever, I still have a collection capability if you want to invoke it. That's my decision."). Such evidence demonstrates the existence of a genuine

---

[5] The Government does not challenge the $2,500 retainer fee nor the $30,000 already paid toward invoices. ECF 93 at 36.

11

issue of material fact as to whether Excell Consulting's fees are contingent on recovery from the Government.

In the alternative, the Government raises a separate basis for disallowing a small portion of Excell Consulting's fees. The Government argues that portions of Excell Consulting's fees—specifically, charges arising from collection efforts and criminal investigation support—violate the FAR cost principle that certain types of settlement expenses be limited to those "reasonably necessary" for "the preparation and presentation" of settlement claims to the contracting officer. ECF 93 at 36-37; FAR 31.205-42(g)(1)(i). The Court agrees.

Plaintiff's Excell Consulting fees include $16,831.88 in charges associated with billing and collection efforts. *E.g.*, Gov't App. 2133, 1346, 1362-63, 1381. Though the Government challenges the inclusion of these fees, ECF 93 at 36-37, Plaintiff does not address this point in its opposition to summary judgment, *see generally* ECF 97. Because Plaintiff offers no theory or support as to how fees incurred based on Excell Consulting's efforts to collect past-due amounts are reasonably necessary to the preparation or presentation of a settlement proposal, the Court cannot find that Plaintiff met its burden in showing a genuine dispute regarding its entitlement to the fees. *See* Rule 56(c)(1)(A).

Likewise, the Government challenges $12,665.88 billed by Excell Consulting for its work on the fraud investigation of Mr. Gonzales. ECF 93 at 37. The billing descriptions for Excell Consulting's fees related to the fraud investigation include discussions with the army special agents who conducted the investigation as well as conversations, correspondence, and memoranda related to the investigation. *E.g.*, Gov't App. at 2134, 1340, 1346, 1350, 1356, 1362-63, 1385, 1389. Plaintiff maintains that recovery of these fees is permissible because the fraud investigation work served a "dual purpose" and that all efforts "would have had to have been done to support the T4C to the DCAA." ECF 97 at 25. As justification for the costs, Plaintiff further argues that such work was necessary to further the T4C claim because, "had Gonzales been convicted of the charges in the indictment[,] he would clearly have been barred from pursuing the T4C settlement claim." *Id*.

Not only has Plaintiff failed to cite any legal authority for the proposition that work performed for a "dual purpose" qualifies for reimbursement, *see id.*, but as outlined above, the FAR requires that fees recovered be "reasonably necessary" to the preparation or presentation of the settlement claim. FAR 31.205.42(g)(1)(i). Here, Plaintiff has not supported its allegation that the challenged fees relate in any way to the preparation or presentation of its settlement proposal, as required to recover. *Id*. Try as it might, the Court fails to imagine any scenario where the criminal defense of a contractor in their personal capacity, even if related to the contract at issue, is reasonably necessary for the preparation and presentation of a settlement proposal to a contracting officer. *Id*. To find otherwise would be contrary to the limiting language of the relevant FAR provision and would unsustainably expand the scope of the provision. Because nothing cited in the record suggests that these fees were incurred for any purpose other than dealing with the fraud

investigation, the Court finds that no reasonable fact finder could construe such work as preparation or presentation of the settlement proposal, and thus summary judgment is proper. *See Anderson*, 477 U.S. at 247-48.

In sum, Plaintiff's argument for summary judgment with respect to disallowing $243,201.91 of Excell Consulting's fees on the theory that it is a contingent amount fails because there is a genuine dispute of material fact regarding whether that amount is contingent. But, Plaintiff is barred as a matter of law from recovering the portions of Excell Consulting's fees related to collections efforts and the fraud investigation because they are not allowed since they are contrary to the requirement of FAR 31.205-42(g)(1)(i) that settlement costs be "reasonably necessary" for the "preparation and presentation" of settlement claims to the contracting officer.

### D. Legally Insufficient and Factually Unsupported Costs

Next, the Government challenges several additional costs claimed by Plaintiff on the grounds that they fail as a matter of law or are factually unsupported.[6] ECF 93 at 25-38. Unlike the DRC or Excell Consulting fees, however, Plaintiff does not present any evidence or argument in support of these specific costs. Instead, in Plaintiff's Response to the Government's Motion for Partial Summary Judgment on these particular costs, Plaintiff simply argues as follows:

> In Section IV, subparagraphs B through O, the government goes through a number of line items in the T4C settlement proposal claiming that [Plaintiff] is not entitled to these items because they are either not supported by proper documentation or are not allowed under various provisions of the FAR. Neither the government's counsel nor this court, nor plaintiff's counsel, nor the government's expert witness are auditors. See pages from the deposition of the government's expert at PAppx 150, where he acknowledges that he is not an auditor.

ECF 97 at 27. As discussed above, Plaintiff goes on to incorrectly assert that only DCAA auditors may properly determine its entitlement to the claimed costs, while providing no additional support in opposition to the Government's allegations. *Id*. at 27-28.

In responding to a motion for summary judgment, the nonmoving party must plead specific facts demonstrating the existence of a genuine factual dispute. *Celotex*, 477 U.S. at 322-23. Further, as the Federal Circuit has observed, "[t]he party opposing the motion must point to an evidentiary conflict created on the record … Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,

---

[6] These costs include: bid and proposal costs, a portion of vehicle safety signage, a portion of auto and truck expenses, computer internet expenses, insurance expenses, meals, office expenses, a portion of job materials purchased, a portion of payroll costs, a portion of professional fees, travel expenses, utilities, and certain additional T4C costs. ECF 93 at 25-38.

731 F.2d 831, 836 (Fed. Cir. 1984); *see also Lathan Co., Inc. v. United States*, 20 Cl. Ct. 122, 125 (1990) ("[B]ald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion.").

In particular, Rule 56(c)(1)(A) requires the nonmoving party to support that a fact is genuinely disputed through either (1) citing to particular parts of materials in the record; or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. Further, Rule 56(c)(3) provides that "[t]he court need consider only the cited materials, but it *may* consider other materials in the record." (emphasis added).[7] Yet, "whether the court embarks on that burdensome task is discretionary – not mandatory." *Quintana-Dieppa v. Department of Army*, 130 F.4th 1, 12 (1st Cir. 2025).

Here, the Government correctly observes that summary judgment is appropriate with respect to the costs identified in Sections IV.B through IV.M and IV.O of its Motion because Plaintiff fails to establish the existence of a genuine dispute of material fact. ECF 100 at 15. Plaintiff does not point to any law or support in the record that contradicts the Government's position on the allegedly legally or factually unsupported costs. *See* ECF 97 at 27-28; ECF 100 at 15. To survive summary judgment, Plaintiff must provide more than conclusory statements and assertions in response to the Government's Motion. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984) ("In countering a motion for summary judgment, more is required than mere assertions of counsel. The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out … what specific evidence could be offered at trial.") (citing *Barmag*, 731 F.2d at 836.).

Plaintiff fails to point to any evidentiary conflict on the record relating to Sections IV.B through IV.M and IV.O of the Government's Motion, and instead relies on an incorrect and conclusory argument that only DCAA can determine entitlement. ECF 97 at 27-28. The Court is not obligated to sift through the voluminous record at issue to determine whether uncited evidence could create a genuine issue of material fact. Rule 56(c)(3); *Quintana-Dieppa*, 130 F.4th at 12. Because Plaintiff has not pointed to a conflict of fact in the record nor shown that the material cited by the Government fails to show an absence of a genuine dispute of material fact, summary judgment is warranted with respect to the costs identified in Sections IV.B through IV.M and IV.O of the Government's Motion for Summary Judgment. Rule 56(c)(1)(A); *Barmag*, 731 F.2d at 836 ("The party

---

[7] In 2011, Rule 56 was amended in response to the corresponding revision of Fed. R. Civ. P. 56 that became effective in December 2010, which created Subdivision (c)(3). *See* Court of Fed. Cl. Rule 56 rules committee notes to 2011 Amendment.; Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendment ("Subdivision (c) is new. … Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record.").

opposing the [summary judgment] motion must point to an evidentiary conflict created on the record …. Mere denials or conclusory statements are insufficient.").

### E. The Court Defers Ruling as to Profit

Plaintiff's T4C settlement proposal includes a request for profits in the amount of $844,814.28. Gov't App. at 169. As a general rule, the T4C Clause permits contractors to recover a "fair and reasonable" profit. FAR 52.249-2(g)(2)(iii). However, "if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit …." *Id*. In the instant case, the Government argues that there is no genuine issue of material fact that Plaintiff lost money on the Contract and thus, Plaintiff is not entitled to profit. ECF 93 at 38. In the Court's view, the determination of profits is best reserved until all other costs are adjudicated. Accordingly, the Court defers ruling on the Government's Motion insofar as it relates to profit until such time as the Court rules on the remaining portions of Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, the Government's Motion for Partial Summary Judgment (ECF 93) is **DENIED IN PART, GRANTED IN PART,** and **DEFERRED IN PART.** Specifically, the Court: (1) **DENIES** summary judgment as to the method of accounting; (2) **GRANTS** summary judgment as to the costs specified in Sections IV.A through IV.M and IV.O of the Government's Motion as well as the portions of Excell Consulting's fees attributed to collection efforts and the fraud investigation as described in Section IV.N; (3) **DEFERS** ruling as to the recoverability of profit (Section IV.P); and (4) **DENIES** summary judgment as to any remaining costs. The parties **SHALL** submit a joint status report on or before October 15, 2025, including a proposal for further proceedings.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge